# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA



| | | |
|---|---|---|
| Stephanie Brown, individually and on behalf of others similarly situated, | ) ) ) ) | Case No.: |
| | ) | **CLASS ACTION** |
| Plaintiff, | ) ) | **CLASS ACTION COMPLAINT FOR** |
| v. | ) ) | 1. **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227; AND** |
| Care Front Funding d/b/a Capfront | ) ) ) | 2. **VIOLATIONS OF FLORIDA STATUTE § 501.059** |
| Defendants. | ) ) | |
| | ) ) | **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff, Stephanie Brown, brings this action against Defendant Care Front Funding d/b/a Capfront ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and violations of Florida's Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2. This is a putative class action pursuant TCPA and FTSA.

3. Defendant is a business funding company.  To promote its services,

Defendant engages in unsolicited and unlawful marketing, harming thousands of consumers in the process.

4. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

5. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendant took place in the Middle District of Florida.

8. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of Defendant's names in this

Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

### JURISDICTION AND VENUE

10. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant.  Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

11. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant

provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant has made the same phone calls complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

### PARTIES

12.   Plaintiff is a natural person residing in the County of Tampa, State of Florida.

13.   Defendant is a company based in Garden City, New York, conducting financial services.

### THE TCPA

15. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

16. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone

numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

17. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." Breslow v. Wells Fargo Bank, N.A., 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

18. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

19. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent"

for such calls to wireless numbers.  See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

20. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates."   In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

21. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  See Golan v. Veritas Entm't, LLC, 788 F.3d 814, 820 (8th Cir. 2015).

22. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." Golan, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12);  In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

23. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. Id.

24. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

25. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In*

*the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

26. As held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## FLORIDA STAT. § 501.059

27. On June 29, 2021, Governor Ron DeSantis signed into law a bill enacting substantial changes to the Florida Telemarketing Act. The governor's signature on the bill follows the unanimous passage by the Florida Legislature of Senate Bill 1120, which amends Florida's consumer protection law and the Florida Telemarketing Act.

28. As summarized by the Florida Senate Commerce and Tourism Committee, the "bill requires all sales telephone calls, text messages,

and direct-to-voicemail transmissions to have the receiving consumer's prior express written consent if the call will be made using an automated machine to dial the recipient's phone number, or will play a recorded message upon connection with the recipient."

29. Specifically, the statute defines "telephonic sales call" as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. **§ 501.059(1)(I).**

30. A person will be defined as a "called party" if they are a "person who is the regular user of the telephone number that receives a telephonic sales call," under Fla. Stat. **§ 501.059(1)(A).**

31. An "unsolicited telephonic sales call" is one that is made other than in direct response to the express request of the person who is called. under Fla. Stat. **§ 501.059(4)(K).**

32. "If any residential, mobile, or telephonic paging device telephone subscriber notifies the department of his or her desire to be placed on a

"no sales solicitation calls" listing indicating that the subscriber does not wish to receive unsolicited telephonic sales calls, the department shall place the subscriber on that listing." Fla. Stat. § 501.059 (k)(3)(a). Furthermore, "No telephone solicitor shall make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the [no solicitation calls] list." Fla. Stat. § 501.059 (k)(4).

## GENERAL ALLEGATIONS

33. At all times relevant, Plaintiff was an individual residing within the State of Florida.

34. At all times relevant, Defendant conducted business in the State of Florida.

35. On or around June 12, 2009, Plaintiff placed herself on the do not call list indicating that she, as a subscriber, did not wish to receive unsolicited telephonic calls.

36. On or around August 9, 2022, Plaintiff received a phone call from Defendant. When she answered the call, it was initially silent until she heard a beep. After the beep, a live agent came onto the line asking if she

need a business loan. The Plaintiff stated she was not interested and hung up.

37. On or around August 10, 2022, Plaintiff received another phone call from Defendant.

38. On or around August 17, 2022, Plaintiff received another call from Defendant. This time, the live agent acted like it did not know who Plaintiff was or that she had already been called.

39. Defendant's phone calls constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., attempting to persuade Plaintiff to obtain a loan.

40. Plaintiff received the phone calls within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.  Upon information and belief, Defendant made other phone calls to individuals residing within this judicial district and throughout the United States.

41. At no point in time did Plaintiff provide Defendant with her express written consent to be contacted.  In fact, the department was required to have placed Plaintiff on the no solicitation list as required by Fla. Stat. § 501.059 (k)(4)(3)(a).

42. Plaintiff has been on the National Do Not Call Registry since 2009. Defendant is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C. §227(C)(3)(F).

43. Plaintiff is the subscriber and sole user of the 5625 Number and is financially responsible for phone service to the 5625 Number.

44. Defendant's unsolicited phone calls caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance and intrusion on seclusion. Defendant's phone calls also inconvenienced Plaintiff by disruption to her daily life.

45. Defendant's unsolicited phone calls caused Plaintiff actual harm. Specifically, Plaintiff estimates that she spent numerous hours investigating the unwanted phone calls including how they obtained her number and who the Defendant was.   Especially since Plaintiff had already placed herself on the no solicitation list.

46.  Furthermore, Defendant's phone calls took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited phone calls and voicemails like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up.

## CLASS ALLEGATIONS

### PROPOSED CLASS

46. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

47.  Plaintiff brings this case on behalf of two Classes defined as follows:

The Federal Do Not Call Class

All persons within the United States who received two phone calls within a 12 month period from Defendant to said person's telephone and such person had previously included their name on the National Do Not Call Registry at least 31 days prior to receiving Defendant's first call, within the four years prior to the filing of this Complaint.

The Florida FTSA Class

All persons within the State of Florida who received any solicitation/telemarketing phone calls from Defendant to said person's cellular telephone and such person had not previously consented to receiving such calls within the four years prior to filing of this Complaint.

48. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

49. Upon information and belief, Defendant has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands

of consumers throughout the United States without their prior express consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

50. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

51. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

   (1)   Whether Defendant made non-emergency calls to Plaintiff's and Class members' telephones;

   (2)   Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

   (3)   Whether Defendant's conduct was knowing and willful;

   (4)   Whether Defendant is liable for damages, and the amount of such damages;

    (5)    Whether Plaintiff and the putative class members had previously registered their phone numbers on the national do not call registry; and

    (6)    Whether Defendant should be enjoined from such conduct in the future.

52. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely made phone calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

53. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

54. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

55. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

56. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests

of the Class, although certain class members are not parties to such actions.

### COUNT I

### NEGLIGENT AND WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(C)(5)

### (ON BEHALF OF PLAINTIFF AND THE CLASS)

57. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

58. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of the court of a State bring in an appropriate court of that State –

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for such violation, whichever is greater, or

(C) both such actions.

59. Defendant – or third parties directed by Defendant – dialed numbers to make non-emergency telephone calls to the telephones of Plaintiff and the other members of the Class defined below.

60. These calls were made without regard to whether or not Plaintiff or class members were on the National Do Not Call Registry.. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

61. Defendant has, therefore, violated § 227(c )(5) of the TCPA making two or more non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

62. Defendant knew that it did not have prior express consent to make these calls, especially since Plaintiff told Defendant she was not interested in what Defendant was offering. The violations were therefore willful or knowing.

63. As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for

each violation, and a maximum of $1,500 in statutory damages for willful violations. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

## COUNT II

### VIOLATIONS OF FLA. STAT. § 501.059

#### (ON BEHALF OF PLAINTIFF AND THE CLASS)

69. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

70. Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class in violation of Fla. Stat **§ 501.059(8)(A).**

71. Under Fla. Stat **§ 501.059(1)(G),** prior consent includes the signature of the called party, the telephone of the called party, as well as clear authorization to the person making or allowing the telephonic sales call to make the call. Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when these telephonic sales calls were made. *Id*.

72. Defendant has, therefore, violated Fla. Stat **§ 501.059(8)(A)** AND Fla. Stat **§ 501.059(1)(G)** by using an automatic telephone dialing system and/or pre-recorded voice messages to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

73. Defendant knew that it did not have prior express consent to make these calls and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

74. As a result of Defendant's conduct and pursuant to Fla. Stat **§ 501.059(10)(B)**, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

**WHEREFORE**, Plaintiff, on behalf of himself and the other members of the Class, prays for the following relief:

- Certify the case as a class action pursuant to Fed.R.Civ.P.23;

- Appointment of Plaintiff as Class Representative;

- Appointment of Plaintiff's attorneys as Class Counsel;

- A declaration that Defendant's practices described herein violate the TCPA;

- A declaration that Defendant's practices described herein violate the FTSA;

- An injunction prohibiting Defendant from using an automatic telephone dialing system to call  telephone numbers assigned to cellular telephones without the prior express permission of the called party;

- An award of actual and statutory damages; and

- Such further and other relief the Court deems reasonable and just.

//

//

//

//

//

//

//

//

//

21

## TRIAL BY JURY

75. Pursuant to the seventh amendment to the Constitution of the United

States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: October 20, 2022                         Respectfully submitted,

                                        BY: /S/ RYAN L. MCBRIDE_____
                                        RYAN L. MCBRIDE, ESQ.
                                        TRIAL COUNSEL FOR PLAINTIFF

                                        Mohammad Kazerouni (1034549)
                                        **Kazerouni Law Group, APC**
                                        245 Fischer Ave., Suite D1
                                        Costa Mesa, CA 92626
                                        Telephone: (800) 400-6808
                                        Facsimile: (800) 520-5523
                                        mike@kazlg.com

                                        Ryan L. McBride (1010101)
                                        **Kazerouni Law Group, APC**
                                        301 E. Bethany Home Road
                                        Suite C-195
                                        Phoenix, AZ 85012
                                        Telephone: (800) 400-6808
                                        Facsimile: (800) 520-5523
                                        ryan@kazlg.com